UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TATIANA SCHNEIDER, M.D. and INTEGRATIVE MEDICAL, P.C.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEREK O'NEILL, BORN FREE NOW, LP d/b/a SQ WORLDWIDE and ABC CORPORATION,<br><br>*Defendants*. | Case No. 1:17-cv-05416-KAM-CLP<br><br>**DECLARATION OF TATIANA SCHNEIDER IN OPPOSITION TO DEFENDANTS' MOTION FOR CONTEMPT** |

I, Tatiana Schneider, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am over 18 years of age and make this declaration based upon personal knowledge of the facts set forth below. If called upon to testify, I could and would testify competently as to the matters set forth herein.

2. I am an officer of Plaintiff Integrative Medical, P.C. ("Integrative Medical" collectively "Plaintiffs"). Together we are the plaintiffs in this action I make this declaration upon personal knowledge and/or the business records of Integrative Medical.

3. I make this declaration in opposition the proposed Order to Show Cause for Contempt of Court and Sanctions (the "Contempt Motion") filed by Defendants Derek O'Neill ("O'Neill") and Born Free Now, LP d/b/a SQ Worldwide ("SQ" collectively "Defendants").

4. On or about September 15, 2017, Plaintiffs filed the instant Complaint seeking urgent relief to protect Plaintiffs' reputation and good will in the medical industry from Defendants' campaign of harassment and unfair competition. The gravamen of the Complaint is twofold: (A) Defendants' used their public website and email blast, which promotes their services,

to make false statements about Plaintiffs' services, while advertising a book for sale and (B) Defendants requested money from me in exchange for services, that where not received.

5. When we filed the Complaint, Plaintiffs also sought a preliminary injunction for Defendants to take down a single, publically-available blog post about Plaintiffs.

6. In lieu of having to respond to our preliminary injunction, Defendants agreed to a consent preliminary injunction to take down the blog and not to republish its contents (the "Consent Order").

7. To give the false appearance of a setoff to our claims, on or about January 16, 2018, Defendants filed counterclaims for, *inter alia*, defamation based on, among other things, statements of my opinion and experiences to my long-standing friends and family.

8. I have known Defendant Derek O'Neill for over 13 years. Before I discovered that Defendants were the driving forces behind the authoring of lies and reputational/character assaults described in the Complaint, for almost 10 years (between 2005 and 2014) my family (including my daughter Julia) and I would attend Defendants' workshops in New York and Ireland—where I met many friends and professional colleagues.

9. Sometime around mid-February 2018, my attorneys informed me that Defendants had filed a proposed motion with the Court (the "First Motion") seeking to silence me by taking down or restricting numerous statements that they claimed defamed them (i) from my Facebook and/or Twitter accounts (most of which had nothing to do with Defendants), or (ii) in private emails that I wrote to people understood to be members or leaders of Defendant SQ Worldwide, including Sandra Squires, SQ's president.

10. Among other things, Defendants claimed that I forwarded Ms. Squires a voice recording of an unidentified third party who accused Derek O'Neill of pedophilia and molestation

when that person was a minor.

11. I dispute that many, if any, of my statements on my Facebook or Twitter accounts were about Defendants Derek O'Neill or SQ. Of the few that were, none of them were defamatory or statements of fact—rather they were expressions of my opinion about my personal experiences.

12. Furthermore, in January 2018, I forwarded the unidentified third party's accusations against Derek O'Neill and SQ, to SQ's president, Ms. Squires.

13. Notwithstanding same, while the First Motion made references to certain posts of mine, I really had no idea what specifically Defendants were asking the Court for me to do or say, or not to do or say. The proposed First Motion was so broad and general.

14. On advice of counsel and on my own initiative, I attempted to remove every post that I could reasonably find and that was the subject of the First Motion from my social media accounts in late February 2018.

15. When my attorneys and I attempted to negotiate a resolution to the First Motion in late February 2018, we informed Defendants that the proposed First Motion sought an injunction on generic and/or general language and was an unconstitutional prior restraint on speech, that I would not agree to voluntarily.

16. In response, Defendants changed their demands, claiming they were seeking an injunction in like Plaintiffs' Consent Order and wanted "reciprocity."

17. At one point on or around February 23, 2018, the parties agreed to (and drafted) a proposed stipulation (like the Consent Order) where Plaintiffs agreed not to publish any statements referring to Defendants as engaging in "pedophilia", being a "child molester", being a "rapist" (even though I never said any of those things) in <u>any blog, website, social media account, online bulletin board, or bulk email</u>.

18. Ultimately the negotiations around the First Motion broke down, not because the terms of the proposed stipulation were unacceptable, but because Defendants did not want to discuss global settlement and wanted the stipulation to be an order (to which I declined).

19. In short, after we were unable to resolve the First Motion (or the settle) in late February 2018, I understood Defendants wanted to move forward with their motion.

20. At the present, I understand that Defendants are seeking in the Contempt Motion for the Court to punish me and Integrative Medical for writing private emails in March 2018 to my long-standing friends, whom I considered family, and, as far as I know, are members of Defendant SQ Worldwide and who may have personal knowledge of the history between myself and co-defendant O'Neill as I describe in the Complaint.

21. First, from approximately February 27, 2018 to March 12, 2018, I was traveling out of the country with limited access to email and telephone. I found out about the proposed settlement conference and March 1st order on or around the week of March 12th, after my return from abroad, when I reviewed my emails and voicemails from my attorneys herein.

22. Second, when my attorney informed me about the March 1st Order, I understood that I could not post anything publically about Defendants (which I did not), and I had already taken down all the posts I could find that were subject to the First Motion long before. I did not understand that the March 1st Order was intended to prevent me from talking to anyone, including my family, my friends, my lawyers or potential witnesses.

23. Third, I thought the order was about getting the parties to settle the case.

24. On or about March 11, 2018, my daughter Julia informed me that she was distressed because Defendant Derek O'Neill had called her that day, discussing the case and spreading further lies about me.

25.     In the Contempt Motion, Defendants claim that I wrote emails to James Gray Robinson, Shannon Carson, Colette Savage and Jiyun (Gaia) Park between March 15, 2018 and March 30, 2018 and that I posted something on Facebook about him.

26.     I have known and been friends with James Gray Robinson for over 10 years. I understand him to be a leader at SQ.

27.     I have known and been friends with Shannon Carson for over 10 years.  I understand her to be a leader at SQ. We have emailed each other dozens of times over the years.

28.     I have known and been friends with Colette Savage for over 8 years. I understand her to be a leader at SQ. We have emailed each other dozens of times over the years.

29.     I have known and been friends with Jiyun (Gaia) Park for over 10 years. I understand her to be a leader as SQ. I have planned to travel with Gaia to Ireland and we have emailed each other dozens of times over the years. For quite some time, she has included the following language in her signature block to emails:

>  www.derekoneill.com
> facebook.com/derekoneill101
> twitter.com/derekoneill101

30.     Because I thought the order was in contemplation of settlement, I wanted to reach out to Defendants before the settlement conference to explain my positions in this case. While I do not believe that my free speech should be infringed at all, I did not believe that I was violating the order when I was talking to people who I understood to be the Defendants—as well as my close friends.

31.     The March 15, 2018 email to James Gray Robinson did not mention Defendants and was not about Derek O'Neill at all.

32.     The March 27, 2018 emails to my friends are not defamatory, nor mention any of

the that concerned the allegations in the First Motion, i.e. referring to Defendants as engaging in "pedophilia", being a "child molester", being a "rapist." They are just my opinions and recount my experiences.

33. The March 23, 2018 email to Shannon Carson did not mention Defendants.

34. I believe that Defendant Derek O'Neill must have communicated a message to Shannon Carson to bait me into saying something about him or Defendants because her response to my March 23rd email was "Hey Tanya, I'm assuming you're referring to Derek. Have you reached out to him for help? Love, Shannon." In response, I forwarded her the similar message that I sent to my friends on March 27th above.

35. Again, I felt that I needed to explain my point of view to my friends, who were also constituent members of SQ, in order for any resolution of the case to be successful.

36. My April 8, 2018 post on Facebook did not mention Defendants and was not about Derek O'Neill at all. I have no control over what third parties write or comment on Facebook.

37. At no point in time since I found out about the March 1st Order, did I publically (or privately) write or say anything to third parties who I did not believe to be Defendants or members of SQ, that concerned the allegations in the First Motion, i.e. referring to Defendants as engaging in "pedophilia", being a "child molester", being a "rapist."

38. Under Defendants' interpretation of the March 1st Order, I cannot talk to my husband or my daughter about the case, while Defendants can text and call my daughter—and talk amongst themselves.

39. I respectfully request that Defendants' motion be denied.

DATED: May 14, 2018

*Tatiana Schneider*
_____
TATIANA SCHNEIDER